ROGER EASON, Plaintiff-Appellant, *v.* GARFIELD PARK COMMUNITY HOSPITAL *et al.*, Defendants.—(HEALTH & HOSPITALS GOVERNING COMMISSION OF COOK COUNTY *et al.*, Defendants-Appellees; DR. ROCCO MARRESE, Defendant-Appellant.)

First District (3rd Division)    No. 62074

Opinion filed November 23, 1977.

SIMON, P. J., dissenting.

Leonard M. Ring, of Chicago, for appellant Roger Eason.

McKenna, Storer, Rowe, White & Farrug, of Chicago (John F. White, Robert S. Soderstrom, and Robin J. Omahama, of counsel), for appellant Dr. Rocco A. Marrese.

Winston & Strawn, of Chicago, for appellees.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

The plaintiff, Roger Eason, entered the Garfield Park Community Hospital on October 22, 1971, for treatment of a comminuted fracture of the left distal tibia. An unpadded metal splint was applied to Eason's leg. Because Eason did not have medical insurance, lacked financial resources and was not on welfare, he was transferred to the Cook County Hospital on the same day. The Cook County Hospital is owned and operated by the Health and Hospitals Governing Commission of Cook County, a local public entity under the laws of the State of Illinois. At the Cook County Hospital Eason was placed in a hallway and left there untreated until October 24, 1971. On this date, Eason's left leg was blistering and beginning to ulcerate. The condition of the leg steadily worsened. The leg was amputated on August 9, 1972. Cook County Hospital employees treated Eason almost daily either in the hospital or at his home from October 24, 1971, to the date of his final discharge from the hospital on August 29, 1972.

After the expiration of six months following his discharge from the Cook County Hospital, Eason filed this malpractice action against the Garfield Park Community Hospital, several of its employees or contracting services, the Health and Hospitals Governing Commission of Cook County (hereinafter Commission) and four physicians employed by the Commission at the Cook County Hospital. The suit alleged negligence in failing to attend to the fracture properly and in allowing the metal splint to remain on Eason's leg for such time as to cause the condition which ultimately resulted in the amputation.

A six-count third amended complaint was filed on November 19, 1974. On January 10, 1975, the Commission and its four employees moved to dismiss counts IV, V and VI of the third amended complaint, which contain the allegations of malpractice as to them. The motion to dismiss cited Eason's failure to serve upon the Commission the notice required by section 8—102 of the Local Governmental and Governmental Employees Tort Immunity Act (hereinafter Act) (Ill. Rev. Stat. 1971, ch. 85, par. 8—102) and that section 8—103 of the Act (Ill. Rev. Stat. 1971, ch. 85, par. 8—103) provides for the dismissal of any action for the failure to serve notice. The specified sections of the Act are as follows:

"Section 8—102. Within 6 months from the date that the injury or cause of action, referred to in Sections 8—102 and 8—103, was

received or accrued, any person who is about to commence any civil action for damages on account of such injury against a local public entity, or against any of its employees whose act or omission committed while acting in the scope of his employment as such employee caused the injury, must personally serve in the office of the Secretary or Clerk, as the case may be, for the entity against whom or against whose employee the action is contemplated a written statement, signed by himself, his agent or attorney, giving the name of the person to whom the cause of action has accrued, the name and residence of the place or location where the accident occurred, the general nature of the accident, the name and address of the attending physician, if any, and the name and address of the treating hospital or hospitals, if any."

"Section 8—103. If the notice under Section 8—102 is not served as provided therein, any such civil action commenced against a local public entity, or against any of its employees whose act or omission committed while acting in the scope of his employment as such employee caused the injury, shall be dismissed and the person to whom such cause of injury accrued shall be forever barred from further suing." Ill. Rev. Stat. 1971, ch. 85, pars. 8—102 and 8—103.[1]

The Circuit Court of Cook County granted the motion to dismiss counts IV, V and VI as they pertain to the Commission and Doctors Edward Lambert, Hatem Galal and Arsen Pankovich. However, because Dr. Rocco A. Marrese had privately purchased malpractice liability insurance, the Circuit Court did not dismiss the counts as they pertain to him. The order disposing of the motion was dated March 24, 1975, and, pursuant to Supreme Court Rule 304(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 304(a)), it provided that there was no just reason to delay enforcement or appeal. The private defendants are not involved in this appeal.

While admitting noncompliance with the terms of the notice requirement of the Act, Eason appeals from the dismissal of the Commission and the three physician employees. Eason raises the following issues on appeal:

1. The constitutionality of section 8—102 and 8—103 of the Act, as to due process, equal protection, special privileges and classifications, as to the application to a person who is physically or mentally incapable of complying by reason of the injury being sued upon, and as to the application to a patient while he is still

---

[1] P.A. 78-201, §1, effective October 1, 1973, extended the period within which one must serve the required notice to one year. (Ill. Rev. Stat., 1975, ch. 85, par. 8—102.) This extension does not apply to the instant cause of action which accrued no later than August 29, 1972.

under treatment by the defendants being sued, and,

2. Whether the purchase of malpractice liability insurance by an employee of a local governmental entity waives the notice requirement under the Act.

Dr. Marrese appeals from the denial of the motion to dismiss the counts as they pertain to him. He contends that the waiver provisions of section 9—103 of the Act apply only to local governmental entities and not to their employees.

Section 9—103 of the Act reads:

"Section 9—103. (a) A local public entity may contract for insurance against any loss or liability which may be imposed upon it under this Act. Such insurance shall be carried with a company authorized by the Department of Insurance to write such coverage in Illinois. The expenditure of funds of the local public entity to purchase such insurance is proper for any local public entity.

(b) Every policy for insurance coverage issued to a local public entity shall provide or be endorsed to provide that the company issuing such policy waives any right to refuse payment or to deny liability thereto within the limits of said policy by reason of the non-liability of the insured public entity for the wrongful or negligent acts of itself or its employees and its immunity from suit by reason of the defenses and immunities provided in this Act." Ill. Rev. Stat. 1971, ch. 85, par. 9—103.

■■ The constitutional issues raised by Eason have already been decided by the supreme court with the result that the notice requirement has been held to be a constitutional means of limiting local governmental liability. *Saragusa v. City of Chicago* (1976), 63 Ill. 2d 288, 348 N.E.2d 176 (special classification of local governmental entities constitutional); *Housewright v. City of LaHarpe* (1972), 51 Ill. 2d 357, 282 N.E.2d 437 (notice requirement does not deny equal protection of the law); *King v. Johnson* (1970), 47 Ill. 2d 247, 265 N.E.2d 874 (notice requirement is result of valid legislative classification, does not violate constitutional ban on special legislation or the granting of special privileges and immunities, and is reasonably related to imposing liability on all local governmental entities on a fair and orderly basis). See also *Zavala v. City of Chicago* (1977), 66 Ill. 2d 573, 363 N.E.2d 848.

■■ With regard to Eason's contention that an exception to the notice requirement should be allowed in his case, strict compliance with the terms of the Act has been mandated in all cases except those which have come within two carefully limited categories: those in which the lawsuit itself was filed within the notice period (*Dunbar v. Reiser* (1976), 64 Ill. 2d 230, 356 N.E.2d 89. See also *Saragusa v. City of Chicago*), and those in which a young child is unable to give notice due to physical and mental

incompetence (*McDonald v. City of Spring Valley* (1918), 285 Ill. 52, 120 N.E. 476). Eason fits neither of these exceptions and presents no persuasive argument for this court to enunciate others. After his final discharge from the hospital on August 29, 1972, Eason was no longer under the treatment by the defendants.

■■ We interpret section 9—103(b) of the Act in such a manner as to reject Eason's argument that the purchase of malpractice insurance by one of the physician employees operates to bar the defenses and immunities of the Act as to the Commission itself and the other employees. The Circuit Court of Cook County correctly viewed the limits of the statutory exception. We hold that the Circuit Court properly dismissed the counts of the third amended complaint as they pertain to the Commission and Doctors Edward Lambert, Hatem Galal and Arsen Pankovich.

■■ However, section 9—103(b) of the Act cannot be used to sanction the trial court's failure to dismiss Dr. Marrese. This section relates to the purchase of insurance by the public entity itself, and it operates to bar statutory defenses and immunities only under the circumstances it describes. (See also *Housewright v. City of LaHarpe; Sullivan v. Midlothian Park District* (1972), 51 Ill. 2d 274, 281 N.E.2d 659.) Dr. Marrese's prudence in procuring individual malpractice insurance to protect himself from suits arising primarily from work done outside his employment at the Cook County Hospital cannot be looked to in order to penetrate the limited protection afforded him as a local governmental employee. He is entitled to the same treatment enjoyed by the other physician employees who have been dismissed as defendants in this cause.

Accordingly, for the foregoing reasons the judgment of the Circuit Court of Cook County dismissing counts IV, V and VI of the third amended complaint as they pertain to the Commission and Doctors Lamberg, Galal and Pankovich is affirmed, and the judgment denying the motion to dismiss the counts as they pertain to Dr. Marrese is reversed.

Affirmed in part; reversed in part.

McNAMARA, J., concurs.

Mr. PRESIDING JUSTICE SIMON, dissenting:

At issue is the interpretation of section 8—102 and 8—103 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1971, ch. 85, pars. 8—102, 8—103). Those two statutory provisions read, in order:

"Within 6 months from the date that *the injury or cause of action,*

referred to in Sections 8—102 and 8—103, was received or accrued, any person who is about to commence any civil action for damages on account of such injury against a local public entity, or against any of its employees whose act or omission committed while acting in the scope of his employment as such employee caused the injury, must personally serve in the Office of the Secretary or Clerk, as the case may be, for the entity against whom or against whose employee the action is contemplated a written statement, signed by himself, his agent or attorney, giving the name of the person to whom the cause of action has accrued, the name and residence of the person injured, *the date and about the hour of the accident, the place or location where the accident occurred, the general nature of the accident,* and the name and address of the attending physician, if any, * * *."

"If the notice under Section 8—102 is not served as provided therein, any such civil action commenced against a local public entity, or against any of its employees whose act or omission committed while acting in the scope of his employment as such employee caused the injury, shall be dismissed and the person to whom such cause of injury accrued shall be forever barred from further suing." (Emphasis added.) Ill. Rev. Stat. 1971, ch. 85, pars. 8—102, 8—103.

Section 8—102 refers to an "injury or cause of action" referred to in that section, and then delineates more precisely the types of injuries or causes of action the notice requirement is intended to apply to by providing that the injured party must give the alleged governmental tortfeasor the following information: "[T]he name and residence of the person to whom the cause of action has accrued, the name and residence of the person injured, the date and about the hour of the accident, the place or location where the accident occurred, the general nature of the accident * * *." Clearly, this additional language makes evident the purpose of this statute: To ensure that in the case of injuries resulting from *accidents*, a prospective plaintiff must serve notice of his lawsuit on the local public entity.

In addition, section 8—102 states that the injured party must serve notice within "6 months from the date [of] * * * the injury or cause of action, referred to in Sections 8—102 and 8—103." This language indicates that the notice requirement applies only to the injuries and causes of action specifically addressed by those two statutory sections—that is, those resulting from accidents. It demonstrates by implication that the Tort Immunity Act does not require parties bringing suit against local governmental bodies and employees for any tortious injuries and causes

of action not covered by sections 8—102 and 8—103 to give the notice contemplated.

Had the statute been intended to include within the notice requirement any injury for which a governmental body might be liable, the legislature would have used a broader term or phrase, such as "injury," rather than the more exact and particular word "accident," which limits the types of injuries covered. The statute, however, specifically and repeatedly says that the injured party must give information about the "accident"—a usage implying legislative intent to cover accident victims, such as workmen who accidentally fall off ladders, or pedestrians who are accidentally struck by a government-owned automobile or fall on a broken sidewalk—and to exclude victims of medical malpractice or other injuries not ordinarily considered "accidents." The plaintiff in this case suffered an injury, but it strains credulity and common sense to interpret the statute to mean that what happened to him was an "accident."

Interpreting the statute to mean that the plaintiff was not required to give notice within the 6-month period is consistent with the caselaw which has construed that statute in recent years. First, the Local Governmental and Governmental Employees Tort Immunity Act is in derogation of the common-law action against local public entities and must, therefore, be strictly construed against the local public entity. (*Helle v. Brush* (1973), 53 Ill. 2d 405, 409, 292 N.E.2d 372; *Reynolds v. City of Tuscola* (1971), 48 Ill. 2d 339, 342, 270 N.E.2d 415.) Second, neither the cases cited in the majority opinion nor other cases which have interpreted the statute's provisions involved injuries caused by alleged medical malpractice, or even similar factual situations, except for *Dunbar v. Reiser* (1976), 64 Ill. 2d 230, 356 N.E.2d 89. In that case, the plaintiff-decedent's suit claimed that her death was caused when firemen in Chicago's inhalator unit withdrew oxygen from her while she may still have been alive after an apparent heart attack. There, however, the court did not reach a decision about whether the injury was of a type contemplated by the notice provision of the statute because it held that the complaint was filed within the 6-month period, and so satisfied the notice requirement of section 8—102 of the Tort Immunity Act.

The rationale behind the notice requirement of the Tort Immunity Act is that it facilitates prompt investigation and allows prompt settlement of meritorious claims. (*King v. Johnson* (1970), 47 Ill. 2d 247, 265 N.E.2d 874.) In this case, the hospital would have had no real need to make an immediate investigation of the treatment of which plaintiff complains, since presumably the hospital's own records already would have included all pertinent information. The hospital had full knowledge of the facts, and full control of, and access to, all the relevant information since it was

the hospital which provided the treatment. In addition, the hospital would not have needed to round up the parties and witnesses to the treatment immediately to preserve their identities and testimony, as in the usual accident case, since everyone involved in the plaintiff's treatment was employed at the hospital, and their names would be in the plaintiff's hospital records. Even if the doctors or nurses involved later left, the hospital should have been able to track them down; doctors and nurses are licensed professionals who generally possess up-to-date employment records and leave forwarding addresses when they change positions. In the case of Cook County Hospital, which is famed as a teaching institution, the defendants presumably would have possessed effective controls over the relevant data and personnel, would have maintained adequate medical records on plaintiff and would have had a system for periodically inspecting these records and discovering through them the precise treatment plaintiff received and the reasons he was left unattended or untreated. The final, and perhaps critical, point bolstering this statutory interpretation and result is simply that it is unrealistic to expect a patient to give the doctors treating him, and the hospital caring for him, notice that he intends to sue them while he still is under their care and supervision.

Especially relevant here is *Reynolds*, where the court observed at pages 342-43 that a statute such as the Tort Immunity Act "should be liberally construed and should not be used as a stumbling block or pitfall to prevent recovery by meritorious claimants." The court continued, "A liberal interpretation of the statute is necessary because of its position in relation to the common law and because a more restrictive interpretation could lead to absurd, inconvenient or unjust consequences." *Reynolds v. City of Tuscola* (1971), 48 Ill. 2d 339, 343.

Even if the statutory interpretation I suggest (excluding injuries resulting from malpractice from the notice requirements of the Tort Immunity Act) is not followed, and the plaintiff here was required to provide the notice called for by sections 8—102 and 8—103, the question arises: When was he required to give the notice? Under sections 8—102 and 8—103, notice may be given within 6 months of the time that the injury was received or the cause of action accrued. Here, the plaintiff did not serve the statutorily-required notice. But he did file his complaint at law within 7 months of the date he was discharged from the hospital for the last time.

In *Dunbar*, no separate 8—102 and 8—103 notice ever was filed, but because the complaint was filed within the 6-month period, the court ruled that filing the complaint was itself sufficient to satisfy the notice requirement. The rationale behind that holding was grounded in *Saragusa v. City of Chicago* (1976), 63 Ill. 2d 288, 293-94, 348 N.E.2d 176, where the

court noted that filing suit within the 6-month statutory period made the full range of pretrial discovery available to the defendant within that period. The court reasoned:

> "* * * The information bearing on the defendant's liability which may be obtained in this manner will be more complete than what would be obtained under the limited and generalized specifications called for in the statutory notice. * * * [T]he filing of a complaint within the six-month period affords as much time to investigate the claim as the defendant would have if the notice had been filed within that period." 63 Ill. 2d 288, 293-94.

The next question becomes, then, that of discerning whether the plaintiff filed suit, and thereby gave notice, within 6 months of the date his injury was received or his cause of action accrued. Essentially, the 6-month notice provision in the Tort Immunity Act operates as a shortened statute of limitations; satisfying the notice provision is a condition precedent to a lawsuit. And there is no reason that the concept of when a cause of action accrues should be treated any differently for purposes of the Tort Immunity Act, than in instances when courts have considered the statute of limitations in the context of medical malpractice cases.

The supreme court has held that in "medical malpractice cases * * * the cause of action accrues when the person injured learns of his injury or should reasonably have learned of it." (*Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 40, 262 N.E.2d 450.) This holding has been adopted in section 21.1 of the State Limitations Act, which provides that the critical factor in determining when a cause of action may be brought is "the date on which the claimant knew, or through the use of reasonable diligence should have known * * * of the existence of the injury * * *." (Ill. Rev. Stat. 1975, ch. 83, par. 22.1.) A recent case interpreting the *Lipsey* decision, *Anguiano v. St. James Hospital* (1977), 51 Ill. App. 3d 229, 366 N.E.2d 930, held that a plaintiff could have known or reasonably should have known of his injury for-the first time as late as 3 years after he originally was admitted to a hospital for treatment and began experiencing unexpected difficulties. At that later date, a physician advised the plaintiff's attorneys of the need to have his medical problem analyzed by a competent specialist, to determine whether he may have been negligently treated during his original hospitalization.

In this case, the plaintiff entered the hospital in October 1971 for the presumably routine treatment of a broken leg. His condition deteriorated gradually, he often was under heavy medication, and he was in and out of the hospital several times until his leg finally was amputated in August 1972, 10 months after his original admission to the hospital. The plaintiff's "injury" here was not his original broken leg. And even the amputation of his leg did not necessarily mean that he knew or reasonably should have

known he had received an "injury," for purposes of instituting a malpractice action. The plaintiff may not have realized that something may have gone wrong in the treatment he received until sometime after he left the hospital, began to recover from the amputation, and perhaps even consulted a physician or an attorney, as *Lipsey* and *Anguiano* suggest.

Because plaintiff may not have reasonably learned of his injury until immediately prior to the time he filed his actual complaint, he may have filed suit, and so served notice, within the requisite 6-month period from the time his cause of action accrued. Since it is the defendants here who seek to dismiss the case, they have the burden of showing the earliest date that the plaintiff learned, or reasonably should have learned, of his injury, and that he failed to file suit until at least 6 months after that time. The record does not show that plaintiff was aware or should reasonably have been aware of his injury more than 6 months prior to the filing of this action, and the defendants have not, therefore, discharged their burden of showing they did not receive timely notice.

On the record before this court, I do not believe that sections 8—102 and 8—103 of the Tort Immunity Act bar plaintiff's action. Nor do they shield County Hospital from the need to explain why a patient suffering from a serious fracture was left in a hallway of the hospital for 2 days after his arrival and was untreated during that period as well as whether the treatment he received in the following months leading to the amputation of his leg was proper.